IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GEORGE RUCKER,
    Plaintiff,

v.                                                    Civil No. 3:21cv412 (DJN)

PIEDMONT REGIONAL JAIL
AUTHORITY, *et al.*,
    Defendants.

**MEMORANDUM OPINION**
**(Denying Defendants' Motion to Dismiss)**

Plaintiff George Rucker ("Plaintiff") brings this action against Defendants Piedmont Regional Jail Authority ("PRJA") and James Davis ("Davis") (collectively, "Defendants"), as well as yet-unknown John Doe(s) employees of the PRJA. Plaintiff alleges violations of the Eighth and Fourteenth Amendments, as well as simple and gross negligence. This matter now comes before the Court on the Motion to Dismiss (ECF No. 2) filed by Defendants. For the following reasons, the Court hereby DENIES the Motion to Dismiss (ECF No. 2).

## I.    BACKGROUND

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF No. 1-1). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant Motion.

At all times relevant, Plaintiff was incarcerated at the Piedmont Regional Jail ("PRJ"). (Compl. ¶ 2.) The PRJA constitutes the regional jail authority established by the Virginia Code to manage PRJ. (Compl. ¶ 3.) Davis worked as the superintendent of the PRJ during all times

relevant to this action and, in this role, acted as the "PRJ's chief policymaker." (Compl. ¶ 4.) According to Plaintiff, Defendants collectively "failed to provide necessary, adequate and timely supervision, security, medical care and/or attention to" Plaintiff during his incarceration. (Compl. ¶ 6.) Specifically, Davis and the PRJA placed another inmate, Kyle Brant Wilmoth ("Wilmoth"), in a housing pod for elderly and infirm inmates (including Plaintiff), despite Defendants' knowledge that Wilmoth was a dangerous man, had pled guilty to a violent murder and had previously assaulted elderly and infirm inmates. (Compl. ¶¶ 9-11.)

On May 5, 2020, Plaintiff had received a box of commissary food, purchased by his wife. (Compl. ¶ 12.) Wilmoth approached Plaintiff and demanded the box, a demand that Plaintiff refused. (Compl. ¶ 13.) In response, Wilmoth "brutally beat" Plaintiff and caused him severe and permanent injuries. (Compl. ¶ 13.) The housing pod "was supposed to have been monitored by the John Doe(s) and the PRJA during the time of the attack, but they did not." (Compl. ¶ 14.) Additionally, at "no time during the relevant events did the Defendant John Doe(s) or anyone affiliated with PRJA intervene to stop" the attack. (Compl. ¶ 14.)

B. **Plaintiff's Complaint**

On May 5, 2021, Plaintiff filed a Complaint against Defendants in Richmond City Circuit Court, raising two counts for relief based on the above allegations. (Compl. ¶ 1.) Defendants removed the case to this Court on June 23, 2021, because this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. (ECF No. 1.) Count One of Plaintiff's Complaint raises a § 1983 claim against Defendants Davis and John Doe(s) based on Plaintiff's allegation that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide Plaintiff with constitutionally appropriate safe and secure housing and knowingly exposing him to an unreasonable risk of severe injury from an

assault by another inmate. (Compl. ¶¶ 19-30.) Count Two raises a claim for simple and gross negligence. (Compl. ¶¶ 31-39.) Plaintiff claims that Defendants owed him a duty of care to protect him from reasonably identifiable threats by other inmates, and Defendants breached this duty by housing Wilmoth with Plaintiff when it proved reasonably foreseeable that Wilmoth would violently assault Plaintiff and that Plaintiff would suffer harm as a result. (Compl. ¶¶ 31-39.)

### C. Defendants' Motion to Dismiss

In response to Plaintiff's Complaint, on June 30, 2021, Defendants PRJA and Davis filed a Motion to Dismiss (ECF No. 2), moving to dismiss Plaintiff's claims for failure to state a claim under Federal Rules of Civil Procedure Rule 12(b)(6) and 12(b)(1). In support of their Motion, Defendants contend that Plaintiff's allegations prove too speculative, vague and conclusory to establish that Davis violated Plaintiff's constitutional rights or to state a negligence claim. (Mem. in Supp. of Mot. to Dismiss of Defs. ("Defs.' Mem.") at 7, 13.) Defendants also assert the defense of qualified immunity as to Plaintiff's constitutional claim. (Defs.' Mem. at 21-22.) As to the negligence claim, Defendants maintain that no duty exists that would inure to the benefit of Plaintiff to create a private right of action against Davis or the PRJA. (Defs.' Mem. at 14.) Regardless, Defendants argue that sovereign immunity bars Plaintiff's simple negligence claim. (Defs.' Mem. at 16-17.)

Plaintiff filed his Response in Opposition to Defendants' Motion on July 14, 2021, (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 5)), and Defendants filed their Reply (Reply Br. in Supp. of Mot. to Dismiss ("Defs.' Reply") (ECF No. 6) on July 20, 2021, rendering Defendants' Motion now ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A defendant challenging a plaintiff's standing to seek the relief requested may properly seek dismissal under Rule 12(b)(1). *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III. ANALYSIS

#### A. Section 1983 Eighth Amendment Claim Against Davis and Doe(s)

The Court begins by addressing Defendants' arguments regarding the federal constitutional claim brought by Plaintiff. Defendants contend that the allegations contained in the Complaint fail to demonstrate a violation of Plaintiff's Eighth/Fourteenth Amendment rights. (Defs.' Mem. at 7.) Relatedly, they maintain that qualified immunity should bar Plaintiff's constitutional claim. (Defs.' Mem. at 21.) Plaintiff counters that his allegations prove more than sufficient to state a claim against Defendants and that qualified immunity does not otherwise act as a bar. (Pl.'s Resp. at 19-23.)

To state a § 1983 claim, Plaintiff must allege that Defendants (1) deprived him of a constitutional right or a right secured by the laws of the United States; and, (2) they did so while

acting under color of state law. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Because vicarious liability proves inapplicable to § 1983 claims, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

However, the doctrine of qualified immunity will shield "government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021). To determine whether qualified immunity applies, the Supreme Court has established a two-step inquiry in which courts must determine: (1) "whether the facts that a plaintiff has alleged [if resolved on a motion to dismiss] or shown [if resolved on a motion for summary judgment] make out a violation of a constitutional right;" and, (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

While the Supreme Court previously required courts to follow these steps in sequential order, it has since held that "while the sequence set forth [ ] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 555 U.S. at 236 (discussing *Saucier*, 533 U.S. 194 (2001)). Now, "judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.*

Plaintiff asserts that Defendants violated his constitutional rights by knowingly exposing him to an unreasonable risk of sustaining severe injury from an assault by another inmate and acting in a manner that amounted to deliberate indifference to Plaintiff's safety, security and

medical needs or conditions of confinement. (Compl. ¶¶ 20-22.) Plaintiff's constitutional claim relies on the Eighth Amendment, as incorporated against the States by the Fourteenth Amendment, and which prohibits the imposition of "cruel and unusual punishment." U.S. Const. amend. VIII. In the prison context, the Eighth Amendment's prohibition of "cruel and unusual punishment" protects inmates against inhumane treatment and conditions while imprisoned. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, the Court must ask: (1) whether Defendants' failure to prevent Plaintiff's attack by Wilmoth violated his Eighth Amendment/Fourteenth Amendment rights; and, (2) if Defendants' actions amounted to a constitutional violation, whether the state of the law as of May 5, 2020, put Defendants on fair notice that their conduct violated Plaintiff's rights.

### 1. *Plaintiff Has Adequately Alleged a Violation of His Eighth/Fourteenth Amendment Rights.*

The Eighth Amendment obligates prison officials to protect a prisoner from violence by another prisoner, as "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (describing the "protection [a prisoner] is afforded against other inmates" as a condition of his confinement). However, prison officials do not incur constitutional liability for every act of violence inflicted by one inmate on another. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A prison official need only "take reasonable measures to guarantee the safety of other inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

Thus, to state an Eighth Amendment claim that a prison official has failed to protect him from another inmate, a plaintiff must satisfy a two-part test. First, the inmate must establish that the deprivation suffered or harm inflicted "was 'sufficiently [and objectively] serious,'" and,

7

second, "that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). As for the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

As to the second requirement, a prison official acts with a "sufficiently culpable state of mind" when the official acts with "'deliberate indifference' to inmate health or safety." *Id.* The standard of "deliberate indifference" requires a state of mind "more blameworthy than negligence." *Id.* at 835. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, when:

> [A]n Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id.* at 842-43.

In *Brown v. North Carolina*, the Fourth Circuit found allegations that staff members were aware of an inmate's grudge against the plaintiff, knew of prior problems between the inmate and that plaintiff, but nonetheless sent the plaintiff into the inmate's housing block to pick up supplies sufficient to show that these staff members "were deliberately indifferent to the serious harm posed by his fellow inmate." 612 F.3d 720, 723 (4th Cir. 2010). Similarly, in *Wilson v. Wright*, the court held that a jury could find that the plaintiff was exposed to an objectively substantial risk of harm when, the defendant assigned the plaintiff, a small, young, white male with a low-security classification to a cell also occupied by a large, high-security inmate with a history of prison assaults and who was imprisoned for raping a small, young, whit male, and the

8

larger inmate raped the plaintiff. 998 F. Supp. 650, 655 (E.D. Va. 1998). Evidence existed from which a jury could conclude that the defendant had read both the plaintiff's and the other inmates's files before the cell assignment and, therefore, knew that the assignment would increase the risk of harm to plaintiff. *Id.*

From these cases, the Court can conclude that when facts exist to show that a plaintiff would be particularly vulnerable in the presence of another inmate and susceptible to violence at their hands, and defendant correctional officers disregard these facts to purposefully bring these inmates in contact with one another, the plaintiff may state a viable Eighth Amendment claim. Here, viewing all allegations in a light most favorable to Plaintiff at this stage, the Court finds that Plaintiff has established a plausible violation of his Eighth Amendment rights. Plaintiff alleges that Davis *knew* Wilmoth had attacked other infirm inmates in the past and had a general practice of preying on and committing violence against weaker individuals both inside and outside of the jail. (Compl. ¶ 11.) For instance, Davis knew that Wilmoth's incarceration resulted from his murder of an 82-year-old man. (Compl. ¶ 9.)

Yet, despite this knowledge that Wilmoth preyed on infirm victims, Davis made the decision to place Wilmoth in a pod with other infirm inmates. (Compl. ¶ 11.) And, Davis apparently made this housing decision with knowledge of Plaintiff's infirmity. (Compl. ¶ 11.) Specifically, Plaintiff alleges that he suffered from several health ailments. (Compl. ¶ 9.) Plaintiff also implies that the unit in which Davis placed him, housed elderly and infirm inmates. (Compl. ¶ 9.) From these statements, the Court can reasonably conclude that Plaintiff himself was infirm and that Davis knew of this infirmity based on his decision to house Plaintiff with other infirm inmates.

In sum, Plaintiff has alleged that Davis knew of Plaintiff's infirmity, knew of Wilmoth's propensity and history of violence towards infirm inmates and made the decision to house Plaintiff with Wilmoth despite this knowledge. While Plaintiff has not alleged many specific details regarding these facts, these allegations prove sufficient at this stage to assert a plausible violation of Plaintiff's constitutional rights.

### 2. *The Rights Allegedly Violated Were "Clearly Established" in May 2020.*

Because the Court has determined that Plaintiff has made out a plausible violation of his constitutional rights, the Court turns to the second step of this inquiry — whether the rights violated proved clearly established at the time that Defendants violated them. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations, alterations and citations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The "clearly established" standard balances a plaintiff's interest in vindicating her constitutional rights with the interest of government officials in "reasonably . . . anticipat[ing] when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Accordingly, "the right allegedly violated must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (internal quotations and citations omitted).

Qualified immunity does not necessitate that "the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious

10

clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Anderson*, 483 U.S. at 640 (internal quotations and citations omitted). Thus, "the salient question" becomes whether the state of the law at the time of the alleged conduct "gave [the government official defendant(s)] fair warning that their alleged [conduct] was unconstitutional." *Hope*, 536 U.S. at 741.

The claim brought by Plaintiff and the rights asserted therein prove clearly established. The "right at issue is [Plaintiff]'s Eighth Amendment right to be protected from violence committed by other prisoners." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). And, as stated, the duty of correctional officers to protect inmates from violence by another inmate is well-settled by existing law. Furthermore, case law addressing this issue makes it clear that a correctional officer cannot willfully ignore information showing that an inmate would be subjected to a substantial risk of violence from another inmate if housed in the same unit as him. For these reasons, the Court declines to extend the protections of qualified immunity to Defendants at this early state of litigation. Consequently, the Court denies Defendants' Motion to Dismiss as to Count One.

### B. Sovereign Immunity of the Piedmont Regional Jail Authority

The Court next turns to Defendants' argument that the doctrine of sovereign immunity bars Plaintiff's state law claim for negligence. In Virginia, the doctrine of sovereign immunity acts as "a bar to the plaintiff's right of recovery" for state law tort claims against the Commonwealth, unless "the Commonwealth consents to certain claims or legal actions." *Sams v. Armor Corr. Health Servs.*, 2020 WL 5835310, at *13 (E.D. Va. Sept. 30, 2020) (internal quotations and citations omitted). However, this immunity only extends to the PRJA if it constitutes an arm of the state or a municipal corporation acting in a governmental capacity.

11

*Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, 2006 WL 3196750, at *2 (E.D. Va. Nov. 1, 2006). The Fourth Circuit has already concluded that regional jail authorities such as the PRJA do not constitute arms of the state for sovereign immunity purposes. *Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002).

In determining whether a regional jail authority qualifies as a municipal corporation, two factors guide this analysis: (1) "the court must consider what attributes of municipality the entity possesses" and, (2) whether "in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present." *Heckenlaible*, 2006 WL 3196750, at *3 (citing *Va. Elec. & Power Co. v. Hampton Redevelopment & Housing Auth.*, 225 S.E.2d 364, 367 (Va. 1976)) (internal quotations omitted). The six attributes of a municipality include:

> (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth; (2) Creation to serve a public purpose; (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property; (4) Possession of the power of eminent domain; (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; (6) Management of the corporation vested in a board of directors or a commission.

*City of Richmond v. Richmond Metro. Auth.*, 172 S.E.2d 831, 832 (Va. 1970). Federal district courts sitting in Virginia and considering these factors remain split as to whether regional jails such as the PRJA enjoy sovereign immunity, and the question also proves one otherwise unsettled by the Virginia Supreme Court. *See Sams*, 2020 WL 5835310, at *12 n.14 (providing complete list of decisions by federal district courts sitting in Virginia and how they have decided this issue).

However, the majority rule among these cases holds that regional jail authorities similar to the PRJA do not constitute municipal corporations entitled to sovereign immunity. The Court will follow this majority rule to find that the PRJA cannot claim the protections of sovereign

12

immunity on Plaintiff's simple negligence claim. Importantly, as noted by courts in this district, the PRJA lacks two of the attributes "most intrinsic to municipal corporations" — the power of eminent domain and designation as a political subdivision. *See, e.g., Sams*, 2020 WL 5835310, at *15 (citing *Heywood v. Va. Peninsula Reg'l Jail Auth.*, 2015 WL 5026188, at *6 (E.D. Va. Aug. 21, 2015)); *Caramillo v. Corr. Care Sols., LLC*, 2020 WL 4747786, at *4 (E.D. Va. Feb. 28, 2020) (citing *Heywood* to state the same), *report and recommendation adopted*, 2020 WL 2468769 (E.D. Va. May 13, 2020); *Wright v. Va. Peninsula Reg'l Jail Auth.*, 2020 WL 1055665, at *14 (E.D. Va. Mar. 4, 2020) (citing *Heywood* to conclude that "regardless of whether an entity requires all six attributes, an entity cannot be a municipal corporation if it lacks those two attributes as those attributes that are the 'most intrinsic to municipal corporations'"). Indeed, the "statute authorizing municipalities within the Commonwealth to create regional jail authorities, such as [PRJA], does not include language designating the jail authorities as political subdivisions." *Caramillo*, 2020 WL 4747786, at *5 (citing Va. Code Ann. § 53.1-95.7). And, likewise, the relevant statutory authority does not provide the PRJA (or any other regional jail authorities) with the power of eminent domain. Va. Code Ann. § 53.1-95.7.

Thus, the Court adopts the reasoning and extensive analysis set forth in *Sams* (and restated in some detail above) as it pertains to this issue, and finds that the PRJA does not constitute a municipal corporation. Accordingly, the PRJA cannot claim entitlement to immunity from Plaintiff's negligence claim.

### C. Negligence Claims

The Court therefore turns to the substantive viability of Plaintiff's negligence claim. Defendants assert that the Court should dismiss Plaintiff's "simple and gross negligence" claim, because Plaintiff has failed to meet the requisite pleading standard. (Defs.' Mem. at 13.) As a

preliminary matter, Defendants contend that Plaintiff has failed to allege that Defendants violated a duty to Plaintiff that caused Wilmoth's attack. (Defs.' Mem. at 14.) Plaintiff responds that confinement in a regional jail *does* create an affirmative duty to protect inmates held therein from violence by other inmates. (Pl.'s Resp. at 11.) Further, he contends that his allegations prove sufficient to establish both gross and simple negligence by Defendants under Virginia law. (Pl.'s Resp. at 13.)

The elements of a basic negligence claim in Virginia include (1) the existence of a duty, (2) a breach of that duty, (3) causation and, (4) damages. *Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992). Simple negligence "involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). Gross negligence denotes "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Id.* Gross negligence "must be such a degree of negligence as would shock fair minded persons although something less than willful recklessness." *Ferguson v. Ferguson*, 181 S.E.2d 648, 653 (Va. 1971). Notably, "[w]hether or not gross negligence has been proved depends on the facts and circumstances of each case," and "[i]t is often a difficult task to determine whether the facts and the reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law." *Wallower v. Martin*, 144 S.E.2d 289, 292 (Va. 1965). However, "a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016).

Generally, "a person has no duty to control the conduct of third persons in order to prevent physical harm to another." *Burdette*, 421 S.E.2d at 420. However, this general principle

gives way when a "special relationship" exists between the parties, such that the duty to take affirmative action to protect another from foreseeable harm arises. *A.H. by Next Friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 468-69 (Va. 2019).

As noted by courts in this district, the Virginia Supreme Court has never directly stated that a prison official owes a duty of care to a prisoner, but "it appears that courts that have considered the issue have found that prison officials are in a 'special relationship' with inmates such that they owe a duty of care." *Wright v. Peninsula Reg'l Jail Auth.*, 2020 WL 1055665, at *17 (E.D. Va. Mar. 4, 2020) (citing Restatement (Second of Torts) § 314A (1965)), which imposes a duty on "[o]ne who is required by law to take . . . the custody of another under circumstances such as to deprive the other of his normal opportunities for protection[.]"). Indeed, the law clearly requires prison officials to assume custody of inmates and deprive them of their ability to protect themselves. *Id.* Thus, based on this reasoning and the lack of authority holding otherwise, the Court finds that sufficient facts exist to establish a "special relationship" between Defendants and Plaintiff that would impose a duty on Defendants.

Turning to the viability of Plaintiff's gross negligence claim against Defendants Davis and Doe(s), the Court finds that Plaintiff has stated a claim for gross negligence against these individuals sufficient to survive their Motion to Dismiss. Because the Court has already determined that Plaintiff has stated a claim for deliberate indifference, the Court concludes that he has likewise stated a claim for gross negligence against these Defendants. *See Sams*, 2020 WL 5835310, at *31 (concluding the same); *Hixson v. Hutcheson*, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018) ("[A] claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments."). And, because simple negligence constitutes a lower degree of negligence than

gross negligence, the Court concludes that, because Plaintiff has adequately alleged a gross negligence claim, Plaintiff has also necessarily stated a claim for simple negligence. *Cowan*, 603 S.E.2d at 918.

The negligence claims against PRJA also survives under a theory of *respondeat superior*. Under Virginia law, such a theory of liability requires a plaintiff to allege that "the tortious conduct [of the employee] occurred while the employee was performing his employer's business and acting within the scope of the employee's employment." *Heckenlaible*, 2006 WL 2252026, at *3 (citing *Butler v. Southern States Coop. Inc.*, 620 S.E.2d 768, 773 (Va. 2005)). Here, Plaintiff alleges that Davis "was the superintendent of the PRJ at all relevant times" and, as such, "was the PRJ's chief policymaker at all relevant times." (Compl. ¶ 4.) Moreover, in this role, he "was charged with providing security for the PRJ," including ensuring the security, safety, custody and care of Plaintiff. (Compl. ¶ 4.) Additionally, Plaintiff claims that "Defendant John Doe(s) were at all relevant times employed by the PRJA and were acting within the scope of their employment with the PRJA." (Compl. ¶ 5.) In these roles, John Doe(s) were charged with monitoring the housing pods occupied by PRJ inmates, including Plaintiff. (Compl. ¶ 14.)

Thus, Defendant Davis's and Doe(s)'s placement of Plaintiff in the same pod as Wilmoth and then Defendant Doe(s)'s failure to properly monitor the pod, fell within the scope of their job duties as employees of PRJA. As such, the PRJA may be held responsible for the alleged negligence of Davis and Doe(s). The Court therefore denies Defendants' Motion to Dismiss as to Count Two.

### D. Statute of Limitations

Defendants briefly contend that the one-year statute of limitations provided by § 8.01-243.2 of the Virginia Code bars Plaintiff's state law claim. (Defs.' Mem. at 22.) This section

16

provides that "any personal action relating to the conditions of [a prisoner's] confinement . . . shall be brought by or on behalf of such person within one year after the cause of action accrues . . . ." Va. Code § 8.01-243.2. Defendants maintain that because Plaintiff bases his claim against PRJA and Davis on their alleged mismanagement of the jail and failure to enact certain policies and training, all of which occurred *prior* to the specific incident between Plaintiff and Wilmoth in May 2020, Plaintiff's claim should be dismissed as untimely. (Defs.' Mem. at 22-23.)

Plaintiff claims that Wilmoth attacked him on May 5, 2020. (Compl. ¶ 13.) Plaintiff filed his case on May 5, 2021. (Compl. at 1.) Because Plaintiff bases his claim on Defendants' failure to prevent an attack by Wilmoth, which includes Defendants' failure to properly monitor the housing pod on the day in question, Plaintiff's cause of action did not accrue until May 5, 2020. Therefore, Plaintiff filed this suit within the applicable time frame and will not be dismissed on these grounds.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendants' Motion to Dismiss (ECF No. 3).

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 30, 2021